UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION at COVINGTON**

TIMOTHY BIDDLE,          )
                              )
      Plaintiff,        )
                              )       Civil Action No.
v.                         )       2:13-CV-96-JMH
                              )
CAROLYN W. COLVIN, ACTING   )    **MEMORANDUM OPINION**
COMMISSIONER OF SOCIAL      )       **AND ORDER**
SECURITY,                )
                              )
      Defendant.        )

\*\*\*  \*\*\*  \*\*\*

Plaintiff, Timothy Biddle, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying his claims for period of disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I.    OVERVIEW OF THE PROCESS

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters*

*v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir.

1997).  The five steps, in summary, are as follows:

> (1) If the claimant is currently engaged in substantial gainful activity, he is not disabled.
>
> (2) If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found disabled.
>
> (3) If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.
>
> (4) If the claimant's impairment does not prevent him from doing past relevant work, he is not disabled.
>
> (5) Even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Id.*    The burden of proof is on the claimant throughout the

first four steps of this process to prove that he is disabled.

*Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987).  If the

administrative law judge reaches the fifth step without a

finding that the claimant is not disabled, then the burden

shifts to the Commissioner to consider the claimant's residual

functional capacity, age, education, and past work experience to

determine if he could perform other work.  If not, he would be deemed disabled. 20 C.F.R. § 404.1520(f).  Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

## II.  **PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION**

Plaintiff filed his applications for benefits in 2009, alleging disability beginning July 1, 2009 [TR 120-127]. Plaintiff's applications were denied initially and again on reconsideration [TR 60-63; 67-72].  After a hearing before an Administrative Law Judge ("ALJ") on July 7, 2011 [TR 26-55], the ALJ issued an unfavorable decision on October 4, 2011 [TR 6-21]. Plaintiff's request for review to the Appeals Council was denied on March 26, 2013, and the decision of the ALJ now stands as the final decision of the Commissioner [TR 1-4].

At the time of the hearing, Plaintiff was 44 years old [TR 30].  He has an eighth grade education and has past relevant work experience as construction worker, specifically installing ceiling tiles [TR 31-32, 141].  Plaintiff claims that his ability to work is limited due to a back injury, bulging disc and chronic back pain [TR 140].  Plaintiff alleges that he

became disabled on July 1, 2009 and that he could no longer work due to his condition [TR 140].

The ALJ began his analysis by determining that Plaintiff has met the insured status requirements of the Social Security Act through December 31, 2014 [TR 11]. At step one, the ALJ found that Plaintiff has not engaged in any substantial gainful activity since July 1, 2009, the alleged onset date [TR 11]. At step two, the ALJ determined that Plaintiff suffers from the following severe impairments: history of lumbar laminectomy, post-laminectomy syndrome, and chronic pain right S1 nerve distribution from scar tissue formation [TR 11]. Continuing on to the third step, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments [TR 12].

Reviewing the entire administrative record, the ALJ described Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps, climb stairs, kneel, crouch, or crawl. He can frequently stoop. The claimant is limited to only occasional pushing or pulling with the lower right extremity.

[TR 12-13].

At step four of the analysis, considering the testimony of a Vocational Expert ("VE"), the ALJ found that Plaintiff could not perform any past relevant work [TR 19]. However, at step five, the ALJ concluded that, based on Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform [TR 19-20]. Therefore, the ALJ determined that Plaintiff has not been under a disability, as defined in the Social Security Act, from July 1, 2009, through the date of the ALJ's decision. [TR 20].

The ALJ's decision that Plaintiff is not disabled became the final decision of the Commissioner when the Appeals Commission subsequently denied his request for review on March 26, 2013 [TR 1-4]. Plaintiff has exhausted his administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

**III. GENERAL STANDARD OF REVIEW**

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the

United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## IV. ANALYSIS

On appeal, Plaintiff argues that the ALJ's determination was not based on substantial evidence or decided by the proper legal standards. Plaintiff's brief presents three issues to be

determined by this Court: (1) whether the ALJ appropriately applied the "treating physician" rule; (2) whether the ALJ erred in not finding that Plaintiff did not meet or equal Listing 1.04(a); and (3) whether the ALJ erred in finding that Plaintiff could sustain remunerative employment. However, despite the issues raised by Plaintiff, a review of the administrative record reveals that the ALJ's decision was based on substantial evidence and was decided by the proper legal standards.

   A.   Substantial Evidence Supports the Weight the ALJ Gave to the Opinion of Plaintiff's Treating Physician

Plaintiff first argues that the ALJ did not give appropriate weight to the opinions of Plaintiff's treating physician, Michael J. Walls, M.D. In April 2011, Dr. Walls completed a physical residual functional capacity ("PRFC") questionnaire, in which he opined that Plaintiff was capable of low stress jobs; experienced pain constantly; was limited to stand/walk less than 2 hours in an 8-hour day; was limited to two hours of sitting in an 8-hour day; required frequent unscheduled breaks; could occasionally lift less then 10 pounds; could never twist, stoop (bend), crouch/squat, climb ladders or stairs and would miss more than 4 days per month [TR 276-280]. However, the ALJ gave little weight to this opinion [TR 17].

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 530-31; *see also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference"). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris*, 756 F.2d at 435. If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2); *see also Walters*, 127 F.3d at 530.

The Social Security regulations recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and

may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. . . ." 20 C.F.R. § 404.1527(d)(2). Thus, when weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors, such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

In the Sixth Circuit, however, a treating source opinion should be given controlling weight only when it is well-supported by clinical and laboratory findings and is consistent with other evidence of record. *Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir. 1984); *Crouch v. Secretary of Health and Human Services*, 909 F.2d 852, 856 (6th

Cir. 1990); *see also*, 20 C.F.R. §§ 416.927(b), (d)(2), (3)-(4).
The Commissioner is not bound by a mere conclusory statement of
a treating physician, particularly where it is unsupported by
detailed, objective criteria and documentation. *See Landsaw v.
Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th
Cir. 1986). In other words, the supportability of a treating
physician's opinion depends on the degree to which the source
presents relevant evidence to support the opinion, and in
particular, support the opinion with medical signs and
laboratory findings. 20 C.F.R. §§ 416.927(a), (d)(3). "It is
an error to give an opinion controlling weight simply because it
is the opinion of a treating source if it is not well supported
by medically acceptable clinical and laboratory diagnostic
techniques or if it is inconsistent with the other substantial
evidence in the case record." Social Security Ruling ("SSR")
96-2p, 1996 WL 374188, *2 (1996).

In *Wilson*, 378 F.3d at 544, the Sixth Circuit held that if
an ALJ declines to accord controlling weight to a treating
physician opinion, the ALJ must give good, specific reasons for
the weight accorded the opinion. *Id*. at 544. This is
essentially a procedural safeguard, ensuring that a claimant
understands the disposition of his case, and that the ALJ

applied the treating physician rule so as to provide meaningful judicial review of that application. *Id.* at 544-45.

Here, the ALJ considered Dr. Walls' opinion and discussed it in detail [TR 17-18]. The ALJ noted that Dr. Walls had diagnosed Plaintiff with post-laminectomy syndrome and had opined that it was a "chronic condition," that Plaintiff's prognosis was poor and that objective signs include decreased sensation in the right S1 dermatome, absent S1 reflex, antalgic (pain-avoidant) gait, decreased range of motion in the low back, and positive straight leg raise on the right side [*Id.*]. The ALJ also noted Dr. Walls' opinion that Plaintiff's experience of pain or other symptoms would constantly interfere with attention and concentration needed to perform even simple work tasks and that Plaintiff is capable of only low stress jobs due to pain [*Id.*]. The ALJ further noted Dr. Walls' opinion that Plaintiff could not walk even one city block, could sit for 45 minutes at a time and stand for 15 minutes at a time, could stand and walk less than 2 hours and could sit for about 2 hours in an 8-hour day [*Id.*]. He also noted that Dr. Walls opined that Plaintiff would frequently need to take unscheduled breaks and would need a job that permitted shifting positions at will from sitting, standing or walking, as well as that Plaintiff would be absent

more than four days per month as a result of his impairments or treatments [*Id.*].[1]   However, the ALJ gave Dr. Walls' opinion little weight, as he found that it was not consistent with the objective findings, was conclusory in nature and was without substantial support from the other evidence of record [TR 18].

Contrary to Plaintiff's suggestions, the ALJ recognized Dr. Walls as Plaintiff's treating physician [TR 13, 16-18]. However, as is appropriate under the regulations, the ALJ also considered the length of the treating relationship and frequency of examination, noting that, at the time that Dr. Walls rendered his opinion, he had only been treating Plaintiff for less than a year and had only seen him six times.   20 C.F.R. § 404.1527(c)(2)(I); 416.927(c)(2)(I).   The ALJ also wrote that Dr. Walls "apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff], and seemed to uncritically accept as true most, if not all, of what [Plaintiff] reported" [TR 17-18].   Plaintiff argues that there is no indication from the record that Dr. Walls relied on the subjective reports of Plaintiff.   However, the ALJ's conclusion

---

[1]As noted by Defendant, although the ALJ's opinion states that Dr. Walls opined that Plaintiff would be absent more than four days a week [TR 17], this reference is apparently a scrivener's error, as Dr. Walls actually stated that Plaintiff would be absent more than four days per month [TR 280].

that Dr. Walls "apparently" relied on Plaintiff's subjective report and "seemed to" uncritically accept Plaintiff's reports as true was based on the inconsistency of Dr. Walls' opinion with the objective findings, specifically Plaintiff's 2009 MRI [TR 18]. The ALJ had previously noted that the May 2009 MRI of Plaintiff's lumbar spine showed right foraminal disc protrusion with mild indentation of the thecal sac and mild narrowing of the right S1 recess, but not much in the way of structural change [TR 17, 188]. Specifically, Eric Neils, M.D., the radiologist reviewing Plaintiff's MRI, concluded: "The findings at the L5-S1 level are compatible with a combination of mild to moderate scarring/epidural fibrosis and also a small right paracentral and right foraminal disc protrusion with mild indentation of the thecal sac and mild narrowing of the right S1 recess. There is also mild to moderate narrowing of the right L5 neural foramen" [TR 188]. The fact that four of the findings from the May 2009 MRI were mild and two were moderate is substantial evidence supporting the ALJ's conclusion that Dr. Walls' opinion overstated the severity of Plaintiff's limitations.

The ALJ further noted that Dr. Walls' own physical examinations of Plaintiff failed to reveal the type of

significant clinical and laboratory abnormalities that one would expect if Plaintiff were as limited as he alleged [TR 18]. For example, Dr. Walls' physical examinations revealed diminished sensation in only the right S1 dermatome, absent deep tendon reflex for the right S1 only, antalgic gait, some limited lumbar range of motion, and a positive Straight Leg Raise on the right [TR 284, 288, 292, 296, 300, 304]. Otherwise, as noted by the ALJ, the notes from Dr. Walls' physical examinations revealed that Plaintiff's muscle strength and tone was normal, he had no gross bony abnormalities, no visible scoliosis, no pain with palpation, full cervical range of motion, no visible scoliotic deformity, no midline percussion or palpation tenderness, no paraspinous tenderness, no detectable paraspinous muscle spasm, no SI joint tenderness, and a well-healed lumbar incision [TR 17, 284, 288, 292, 296, 300, 304]. The ALJ further noted that no EMG testing was performed to confirm the diagnosis of radiculopathy [TR 17]. Thus, substantial evidence supports the ALJ's conclusion that the medical evidence of record does not support the severity of limitation alleged by Plaintiff or identified by Dr. Walls [TR 17]. The ALJ further found that Dr. Walls' opinion was conclusory, as it provided very little explanation of the evidence relied upon in forming his opinion.

Plaintiff argues that there is other objective evidence, including findings from the MRI, as well as epidural injections, the insertion of a trial spinal cord stimulator and the prescription of narcotic pain medication, that supports Dr. Walls' opinion. However, on review by the district court, "[e]ven if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *Her*, 203 F.3d at 389-390 (citation omitted). Because substantial evidence supports the ALJ's conclusions that Dr. Walls' opinion was not consistent with the objective findings, was conclusory in nature and was without substantial support from the other evidence of record, the ALJ did not err in declining to give Dr. Walls' opinion controlling weight. *Houston v. Sec. of Health and Human Services*, 736 F.2d 365, 367 (6th Cir. 1984). *See also*, 20 C.F.R. §§ 416.927(b), (c)(2). For these reasons, substantial evidence supports the ALJ's decision to discount the opinions of Dr. Walls.

To the extent that Plaintiff suggests that, having given little weight to Dr. Walls' opinion, the ALJ could not rely on non-examining, state agency consultants, specifically, Jay Athy, Ph.D. and Sudhideb Mukherjee, M.D., this argument is without

merit. Dr. Athy's and Dr. Mukherjee's opinions, as state agency consultants and experts in Social Security disability, may be entitled to great weight if their opinions are supported by the evidence in the record. 20 C.F.R. § 404.1527(e)(2); SSR96-6p, 61 Fed. Reg. 34,366-01 (July 2, 1996). Here, Dr. Athy completed a Psychiatric Review Technique on April 10, 2010 and found that Plaintiff had no medically determinable mental impairment, a finding consistent with Dr. Walls' opinions [TR 18, 252-265, 277]. In addition, Dr. Mukherjee completed a PRFC Assessment on April 14, 2010, in which he found that Plaintiff had a light exertional level, except that he could only push and/or pull with his right lower extremity occasionally; can never climb ladders, ropes or scaffolds; can occasionally climb ramps, climb stairs, kneel, crouch, or crawl; and can frequently stoop [TR 18, 267-274]. The ALJ gave Dr. Mukherjee's opinion great weight, as he had the opportunity to review the evidence of record and his opinion was consistent with the objective medical evidence of record and Plaintiff's alleged activities of daily living [TR 18]. Here, the medical evidence of record includes an 2009 MRI with only mild to moderate findings, as well as evidence showing normal muscle strength and tone; no atrophy or fasciculation; no midline percussion, palpation tenderness,

paraspinous tenderness, or SI joint tenderness; and no detectable paraspinous muscle spasm [TR 205-229, 244-247, 281-306]. This medical evidence is consistent with the limitations assigned by Dr. Mukherjee. In addition, although Plaintiff alleged that his activities of daily living were significantly restricted due to pain, the ALJ discounted Plaintiff's allegations, as Plaintiff's allegations could not be objectively verified with any reasonable disagree of certainty, and because of the weak medical evidence supporting Plaintiff's allegations [TR 18].

For these reasons, the ALJ did not err in giving considerable weight to the opinions of Dr. Athy and Dr. Mukherjee, as these opinions were supported by the evidence in the case record. Further, the ALJ gave good reasons for giving greater weight to the opinions of agency sources. *Helm v. Comm'r of Soc. Sec.*, 405 Fed.Appx. 997, 1002 (6th Cir. Jan. 4, 2011)(unpublished)("Once the ALJ determined not to accord [the claimant's treating physician's] opinion 'controlling weight,' the ALJ was required only to provide 'good reasons' for giving greater weight to the opinions of agency sources.")(citing 20 C.F.R. § 404.1527(d)(2)).

B.    The ALJ's Finding that Plaintiff did not Meet or Equal Listing 1.04A (Disorders of the Spine) is Supported by Substantial Evidence

Plaintiff argues that the ALJ erred in not finding that Plaintiff at least "equaled" Listing 1.04A (Disorders of the Spine). Listing 1.04A requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Part 404, Subpart P, App. 1. In this case, the ALJ found that the record was devoid of evidence showing nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation as required by the listing [TR 12].

When alleging that his impairments meet or equal a listed impairment, Plaintiff has the burden of presenting specific medical findings that satisfy *all* the criteria of a particular listing. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 404.1525, 404.1526, 416.920(a)(4)(iii), (d), 416.925, 416.926, *Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). An impairment is considered "medically equivalent" to a listed impairment if the medical findings related to a claimant's impairment are "at least of

equal medical significance" to the required criteria.  20 C.F.R. § 404.1526; *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). Plaintiff has the burden of showing that his impairment is the "medical equivalent" of a listed impairment.  42 U.S.C. §§ 423(d)(5)(A), 1382(a)(3)(H)(I); 20 C.F.R. 404.1512(a), (c), 416.912(a),(c).

Here, Plaintiff concedes that he did not meet every requirement of Listing 1.04A, but argues that he "satisfies nearly every requirement" [DE #6, p. 11].  Plaintiff argues that, with regard to the requirement of nerve root compression, the MRI from May 2009 showed scar tissue formation around the right S1 nerve root, which shows nerve root involvement [TR 188, 282].  Plaintiff further argues that, because the requirements of Listing 1.04A were not precisely met, the ALJ had the duty to call a medical expert to testify as to whether Plaintiff's condition met the rules for medical equivalence, citing Hearings, Appeals, and Litigation Law Manuel (HALLEX) I-2-5-34. According to Plaintiff, because Plaintiff's MRI did not show nerve root compression, but rather scar tissue around the nerve root, HALLEX required the ALJ to obtain medical expert testimony to determine if Plaintiff "equaled" Listing 1.04A and his failure to do so is reversible error.

However, HALLEX is not binding on this Court and many district courts in this circuit have concluded that a deviation from the instructions in HALLEX does not warrant remand. See *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir.2008); *Boyd v. Colvin*, No. 7:13-CV-69-KKC, 2014 WL 3953149 at *3 (E.D.Ky. Aug. 12, 2014); *Estep v. Astrue*, No. 2:11-0017, 2013 WL 212643 at *11 (M.D.Tenn. Jan. 18, 2013)(adopted in *Estep v. Colvin*, No. 2:11-CV-00017, 2013 WL 2255852 (M.D.Tenn. May 22, 2013) ("[E]ven if the Commissioner did not comply with section 1-2-8-40, HALLEX is not considered binding authority in the Sixth Circuit."); *Kendall v. Astrue*, No. 09–239-GWU, 2010 WL 1994912 at *4 (E.D.Ky. May 19, 2010)("HALLEX does not create a procedural due process issue as do the Commissioner's regulations in the Code of Federal Regulations.").

Even so, it was Plaintiff's burden to show that his impairment is the "medical equivalent" of a listed impairment. 42 U.S.C. §§ 423(d)(5)(A), 1382a(3)(H)(I); 20 C.F.R. 404.1512(a), (c), 416.912(a),(c). In addition, as argued by Defendant, here, the ALJ was not considering finding that Plaintiff's impairment "equaled" Listing 1.04A. Rather, he specifically found that Plaintiff did not satisfy the criteria of the listing, as the record was devoid of evidence of nerve

root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation. Thus, the cited HALLEX provision does not apply. Moreover, in making his findings, the ALJ specifically noted that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of Impairments" [TR 12]. The ALJ is charged with evaluating the medical evidence and has overall responsibility for determining medical equivalence and was not required to obtain a medical expert to interpret the medical evidence. 20 C.F.R. §§ 404.1525(a)(3), 404.1526(e); 416.945(a)(3); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Thus, the ALJ did not have a duty to call a medical expert to testify as to Plaintiff's medical equivalency here.

Moreover, as noted by Defendant, Plaintiff's claims that he had shown the required motor loss characterized by muscle weakness, as well as the sensory and reflex loss required to meet or equal Listing 1.04A are also undercut by the medical evidence in the record. In fact, Plaintiff's treating physicians repeatedly noted that Plaintiff had no muscle

21

weakness or atrophy at every examination from May 2009 through June 2011 [TR 208, 214, 218, 222, 229, 246, 284, 288, 292, 296, 300, 304]. Moreover, Dr. Walls described his sensory loss as "diminished to pinprick and light touch in the right S1 dermatome" and the reflexes as normal, "with the exception of right S1 absent" [TR 284, 288, 292, 296, 300, 304]. Thus, the sensory and reflex loss cited by Plaintiff were minimal and the majority of sensation and reflexes were normal.

For all of these reasons, the ALJ applied the correct legal standards in determining whether Plaintiff met or equaled Listing 1.04A and his determination that Plaintiff did not meet or equal Listing 1.04A is supported by substantial evidence.

C.   The ALJ's Determination that Jobs Exist in Significant Numbers in the National Economy that Plaintiff Could Perform is Supported by Substantial Evidence

Plaintiff argues that the ALJ erred by insufficiently explaining Plaintiff's ability to work on a "regular and continuing basis," meaning 8 hours a day, for 5 days a week, or an equivalent work schedule [DE #6, p. 13]. Plaintiff argues that the fact that he returned to work for a substantial period of time after his 2006 laminectomy supports the conclusion that Plaintiff would continue to work if he were able. Plaintiff also points to the hearing testimony of the Vocational Expert

("VE") that an employer in the unskilled job market in the region would, at most, tolerate 1 absence per month [TR 52]. Plaintiff argues that the objective evidence – namely, Plaintiff's reports of pain to Drs. Mullen and Walls; the various treatments attempted by Plaintiff's physicians that failed to alleviate or reduce pain, and the MRI showing scar tissue formation around Plaintiff's right S1 nerve root – supports Dr. Walls' opinion that Plaintiff would miss more than 4 days per month. Thus, based on the VE's testimony regarding the number of tolerated absences and Dr. Walls' opinion that Plaintiff would miss more than 4 day per month, Plaintiff argues that he would be unable to sustain work.

Plaintiff argues that the ALJ's decision lacks meaningful discussion as to why he rejected Dr. Walls' opinion that Plaintiff would miss more than 4 days per month. Plaintiff points to Social Security Ruling (SSR) 96-8p, which requires the ALJ's RFC assessment to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (1996). SSR 96-8p further requires the ALJ to discuss "the individual's ability to perform

sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id.*

Here, the ALJ provided a thorough discussion of the evidence supporting Plaintiff's RFC, citing both medical and non-medical evidence [TR 11-19]. The ALJ further specifically identified the maximum amount of each work-related activity that Plaintiff could perform, based on the evidence available in the case record [TR 12-13]. Moreover, as discussed above, the ALJ considered and extensively discussed Dr. Walls' RFC opinion and explained that he gave it little weight because he found that it was not consistent with the objective findings, was conclusory in nature and was without substantial support from the other evidence of record. The ALJ also discussed Plaintiff's course of treatment – including Plaintiff's physical therapy, epidural steroid injections, and the use of a spinal cord stimulator – both at the hearing and in his opinion [TR 15-19, 35-37]. The ALJ also noted that Plaintiff reported "good relief" with his pain medications, and that, in September 2009, Plaintiff advised a psychologist, Charles Burhman, Psy.D., that he was considering

returning to school for vocational training in a field such as audio engineering, suggesting that Plaintiff was not as severely limited as he or Dr. Walls alleged [TR 15-16]. All of this discussion by the ALJ demonstrates that he clearly complied with the requirements of SSR 96-8 to describe how the evidence in the records supported his conclusions, as well as to explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The ALJ also clearly complied with the requirements to provide a basis for his rejection of Dr. Walls' opinion.

Plaintiff also complains that the ALJ failed to incorporate Dr. Walls' opinion that Plaintiff would miss more than 4 days of work per month into the hypothetical question posed to the VE at the hearing. However, as pointed out by Defendant, "[i]t is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sect. of Health and Human Services*, 987 F.2d 1230, 1235 (6th Cir. 1993)(citation omitted). The ALJ considered Dr. Walls' opinion and gave it little weight, thoroughly discussing his reasons for doing so. Accordingly, he was not required to incorporate the limitations assigned by Dr. Walls that he did

not find credible into the hypothetical question posed to the VE.

For all of these reasons, Plaintiff's argument that the ALJ erred in finding that Plaintiff could sustain remunerative employment is without merit.

**V.  CONCLUSION**

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1)  Plaintiff's motion for summary judgment [DE #6] is **DENIED**;

(2)  the Commissioner's motion for summary judgment [DE #9] is **GRANTED;**

(3)  the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

(4)  a judgment consistent with this Opinion & Order will be entered contemporaneously.

This the 2nd day of September, 2014.

Signed By:

*Joseph M. Hood*

Senior U.S. District Judge